**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
In re:                                         :
                                               :
DEWEY & LEBOEUF LLP, et al.                    :    Chapter 11
                                               :    Case No. 12-12321 (MG)
                                               :
                    Debtor.                    :
----------------------------------------------------------x
VITTORIA CONN,                                 :
on behalf of herself and all others similarly  :
situated                                       :
                                               :
                    Plaintiff,                 :
                                               :    Adv. Proc. No. 12-01672 (MG)
            v.                                 :
                                               :
DEWEY & LEBOEUF LLP,                           :
                                               :
                    Defendant.                 :
----------------------------------------------------------x
```

**FOR PUBLICATION**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO <u>STRIKE AFFIRMATIVE DEFENSES</u>

*A P P E A R A N C E S:*

OUTTEN & GOLDEN LLP
*Attorneys for Vittoria Conn*
3 Park Avenue, 29th Floor
New York, New York 10016
By:   Jack A. Raisner, Esq.

GOULSTON & STORRS, P.C.
*Attorneys for Dewey & LeBouef LLP, as*
*Defendant in Adv. Pro. No. 12-01672-mg*
400 Atlantic Avenue
Boston, Massachusetts 02110
By:   Joshua M. Davis, Esq.
      Elizabeth K. Levine, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Vittoria Conn ("Conn" or "Plaintiff"), on behalf of herself and other former employees of Dewey & LeBoeuf LLP ("Dewey") in this certified class action adversary proceeding, seeks to impose WARN Act liability on the Dewey bankruptcy estate because Dewey terminated employment of the class without providing the 60 or 90 days' advance notice required by federal and New York law, respectively. Dewey's answer to the complaint asserts affirmative defenses including two that are the subject of the pending motion for partial summary judgment or, in the alternative, for judgment on the pleadings—first, the "faltering company" exception to liability, and, second, the "unforeseeable circumstances" exception to liability (together, the "Exceptions").[1] Both defenses are explained below, but the statutory predicate for a WARN defendant to trigger either of these affirmative defenses is (1) shortened notice to employees (*i.e.*, "as much notice as is practicable" when less than the required 60 or 90 days' notice is given) that (2) *must* include a "brief statement" explaining why these particular Exceptions to liability apply in the circumstances.

The Plaintiff's counsel argues that the shortened notice—including the required brief statement—must be in writing. Dewey's counsel acknowledges that the shortened notice must be in writing *but* argues that the required brief statement need not be included in the written notice. It is undisputed here that a written notice was given, and that it did not include the required brief statement. Dewey argues that two separate letters *plus* oral statements made at one or more meetings when *some* but not all employees were present suffices to satisfy the notice requirement. The issue for the Court, therefore, is straight-forward: must the required brief

---

[1] *See Plaintiff's Motion to Strike Affirmative Defenses or, Alternatively, for Partial Summary Judgment* (the "Motion," Adv. Pro. No. 12-01672, ECF Doc. # 39). Unless otherwise noted, all references to the docket are to Adv. Pro. No. 12-01672.

statement be included in the *written* notice before a WARN Act defendant may rely on the faltering company or unforeseeable circumstances affirmative defenses? The Court concludes the answer is **YES**; the notice–including the required brief statement–must be in writing. Since the required brief statement was not included in the written notice that was given here, the motion for summary judgment or for judgment on the pleadings striking the first and second affirmative defenses is granted.

## I.    BACKGROUND

### A.    The Collapse of Dewey

The very public collapse of Dewey & LeBoeuf LLP in early-May 2012 resulted in the end of a storied law firm that traced its roots in the case of Dewey to 1909, and included at various times such legendary lawyers as Elihu Root (who served as the Secretary of War from 1899 until 1904 under Presidents McKinley and T.R. Roosevelt), John Harlan (who served as an Associate Justice of the U.S. Supreme Court from 1955 until 1971), Henry Friendly (who served as a judge on the U.S. Court of Appeals from 1959 until 1974), Emory Buckner (who served as U.S. Attorney for the Southern District of New York from 1925 until 1927), and Thomas Dewey (who served as Governor of New York from 1943 until 1954, and, twice, as a candidate for President of the United States).

In its most recent incarnation, the firm was the result of a merger in 2007 of two prominent New York-based firms, Dewey Ballantine LLP and LeBoeuf, Lamb, Green & MacRae LLP. At its peak, more than 1400 lawyers worked at the firm in 26 domestic and foreign offices. In the months leading up to its collapse, hundreds of partners and associates left the firm. But more than 550 employees (lawyers and non-lawyers) allegedly remained employed

by the firm until their employment was terminated shortly before the chapter 11 bankruptcy filing on May 28, 2012.

Events that unfolded after the bankruptcy filing cast further light on the firm's demise. Seven former employees, including the firm's Director of Finance, have pled guilty to state criminal charges that allege systematic misstatements to partners and creditors about the firm's financial performance dating back to 2007.[2] Three of the most senior people at the firm have been indicted by a state grand jury, pled not guilty, and are awaiting disposition of very serious criminal charges.[3] Disclosure of the Manhattan district attorney's investigation (before any indictments) allegedly torpedoed the firm's efforts to arrange a merger or continued financing of its operations, and resulted in the bankruptcy filing.

### B. Dewey Provides Employees with Letters Warning of Layoffs

On May 4 and 10, 2012, Dewey sent letters to its employees warning that the firm's precarious financial condition could result in employee layoffs. In pertinent parts, these letters provided:

> **May 4, 2012 Letter**:
>
> As you are undoubtedly aware, Dewey & LeBoeuf LLP has unexpectedly experienced a period of extraordinary difficulties in the last few days. Although we continue to pursue various avenues, it is possible that adverse developments could ultimately result in the closure of the firm, which would result in the termination of your employment.
>
> Accordingly, in order to give you as much advance notice as possible, and to comply with any legal obligations that we may have, this letter will serve as conditional advance notice under the Federal Worker Adjustment Retraining and Notification Act ("WARN"), and all other similar applicable state and local laws, of the possibility that your employment may be terminated, and if that occurs your separation will be permanent, not temporary. In addition, you will not have any

---

[2] Ashby Jones, *Guilty Pleas of Dewey Staff Detail the Alleged Fraud*, WALL ST. J., Mar. 29, 2014, at B3.

[3] Jennifer Smith and Ashby Jones, *Fallen Law Firm's Leaders Are Indicted*, WALL ST. J., Mar. 7, 2014, at B1.

> "bumping" rights (that is, the ability to use your seniority), to remain employed by displacing another employee from his or her job.
>
> **May 10, 2012 Letter**:
>
> As you know from the firm's May 4, 2012 WARN Notice issued to all employees, Dewey & LeBoeuf is unexpectedly experiencing extraordinary difficulties. Unfortunately, the situation is deteriorating at a more rapid pace than was initially anticipated. Due to these adverse developments and the firm's inability to find alternative solutions, this decision was not previously anticipated and notice of your termination was given as soon as practicable.
>
> Therefore, this letter confirms that your employment with Dewey & LeBoeuf LLP will end effective May 15, 2012. Your termination is permanent. In addition, you will not have any "bumping" rights (the ability to use your seniority to remain employed by displacing another employee from his or her job).

Dewey's counsel conceded during oral argument of the Motion that neither of these letters fully satisfied the requirements in the WARN Act applicable when employees receive less than 60 days' notice of impending layoffs because the letters did not include the required brief statement.[4]

### C.    WARN Act Litigation Filed and Motion to Dismiss Denied

The Plaintiff filed this class action, alleging claims under the federal, New York, and California WARN Acts (defined below),[5] in the bankruptcy court on May 29, 2012.[6] The

---

[4] *See* Mar. 20, 2014 Tr. at 94:5–10 ("[THE COURT:] Do you agree that neither the May 4th nor the May 10th letters satisfy . . . the notice requirements? MR. DAVIS: "They do not satisfy the brief statement requirement as articulated in [*Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 256 (S.D.N.Y. 1996)].").

[5] For purposes of this opinion, "WARN Acts" refers to the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "Federal Warn Act"), and the New York Worker Adjustment and Retraining Notification Act, New York Labor Law § 860 et seq. (the "NY WARN Act"). While the complaint included a cause of action for violation of California Labor Code § 1400 et seq. (the "CAL WARN Act"), the certified class makes no reference to a CAL WARN Act claim. The Debtor's answer denied that it employed 75 employees in its California office at the time of the layoffs, which is the required number of employees to trigger application of the CAL WARN Act. The focus of the current Motion is the Plaintiff's effort to strike affirmative defenses under the Federal and NY WARN Acts. It appears that the Plaintiff has abandoned any claim under the CAL WARN Act, but it is unnecessary for purposes of the pending Motion to resolve this question.

[6] On May 10, 2012—three days after the plaintiff Conn was fired—she filed a WARN Act class action in the U.S. District Court for the Southern District of New York. After the bankruptcy petition was filed, Conn filed this adversary proceeding in the bankruptcy court.

complaint alleges that the terminated employees were not provided statutorily-required 60 or 90 days' advance notice that their employment might be terminated. Dewey moved to dismiss the complaint, but the Court denied the motion. *See Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 487 B.R. 169 (Bankr. S.D.N.Y. 2013). Familiarity with that decision is assumed. In denying the motion to dismiss, the Court concluded that WARN Act plaintiffs may seek equitable relief, including "back pay as equitable restitutionary relief as opposed to damages." *Id.* at 176.

### D.     Dewey Stipulated to Class Certification

After the Court denied the motion to dismiss, Dewey stipulated to the certification of a class, defined as "the Plaintiff and the other similarly situated employees of Debtor who worked at or reported to Debtor's New York, and Washington D.C. Facilities and were terminated without cause on or before May 15, 2012 or within 30 days of that date, as the reasonably foreseeable consequence of the mass layoffs and/or plant closings order by Debtor on or about May 15, 2012, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), the New York Labor Law § 860 *et seq*. [. . .], excluding those who timely file a request to be excluded from the Class." *Consent Order Granting Motion for Class Certification and Related Relief*, dated March 8, 2013, ¶ 2 (ECF Doc. # 25).

### E.     Dewey Answers and Asserts Affirmative Defenses

Dewey answered the complaint and asserted affirmative defenses. (ECF Doc. # 26.) Only the first and second affirmative defenses are at issue in the current Motion.

Dewey's first and second affirmative defenses provide as follows:

First Affirmative Defense

> The Debtor states that it is not liable to Ms. Conn and/or other members of the putative class pursuant to either the Federal or New York WARN Acts, because it

6

actively was seeking capital or business prior to the terminations and reasonably in good faith believed that advance notice would preclude its ability to obtain such capital or business, and this new capital or business would have allowed the Debtor to avoid or postpone a shutdown for a reasonable period. Sending WARN notices to the Debtor's employees would have had the inevitable effect of consigning the enterprise to failure. These facts establish the statutory "faltering company" defense pursuant to both the Federal and New York WARN Acts. See 29 U.S.C. § 2102(b)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.2.

Second Affirmative Defense

The Debtor states that it is not liable to Ms. Conn and/or other members of the putative class pursuant to either the Federal or New York WARN Acts because while the Debtor was actively seeking capital and/or business opportunities (in the form of a business-preserving merger with another law firm) that would have stabilized its operations the press reported a criminal investigation of one of the Debtor's Chairmen, who had until recently been the sole Chairman of the firm. These reports, which were true, lead [sic] the potential merger partner(s) to abandon discussions and consigned the enterprise to failure in short order. These facts constitute an "unforeseen business circumstance," which is a statutory defense to this action pursuant to both the Federal and New York WARN Acts. See 29 U.S.C. § 2102(b)(2)(A); N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.3.

(*Id.* at 11–12.)

### F. Plaintiff's Motion for Partial Summary Judgment or for Judgment on the Pleadings

The Plaintiff has now moved for partial summary judgment, or, in the alternative, for judgment on the pleadings, striking the first and second affirmative defenses—first, the so-called "faltering company" exception to WARN Act liability, 29 U.S.C. § 2102(b)(1) and N.Y. Comp. Codes R. & Regs. Tit. 12, § 921-6.2; and second, the "unforeseeable circumstances" exception to liability, 29 U.S.C. § 2102(b)(2)(A) and N.Y. Comp. Codes R. & Regs. Tit. 12, § 921-6.3. The Motion is supported by a declaration from the Plaintiff's attorney, Jack A. Raisner (ECF Doc. # 39-2), and the Plaintiff also attached (1) the adversary complaint filed against Dewey (ECF Doc. # 39-7), (2) Dewey's answer (ECF Doc. # 39-4), and (3) the May 4, 2012 and May 10, 2012 letters sent by Dewey to employees (ECF Doc. ## 39-5 and 39-6, respectively).

7

Additionally, the Plaintiff filed a Statement of Undisputed Facts pursuant to Local Rule 7056-1(b) and (e). (ECF Doc. # 39-1.)

Dewey filed an opposition to the Motion (ECF Doc. # 40), along with (1) a response to the Plaintiff's statement of undisputed facts, which asserts additional undisputed facts (ECF Doc. # 42); (2) the Declaration of Stephen J. Horvath, a former Dewey partner (the "Horvath Decl.," ECF Doc. # 41); (3) various e-mails and calendar appointments regarding meetings where Dewey informed employees that they would be terminated (ECF Doc. ## 41-1, 41-3–41-5); (4) lists of Dewey employees who were invited to and/or attended meetings regarding employee termination (ECF Doc. ## 41-2, 41-6); (5) e-mails sent to Dewey employees who did not attend meetings regarding employee termination (ECF Doc. ## 41-7–41-8); and (6) Dewey's May 10, 2012 letter sent to employees regarding their termination (ECF Doc. # 41-9). The Plaintiff filed a Reply (ECF Doc. # 44), supported by Declarations from the Plaintiff (ECF Doc. # 44-1) and from Alice Stuart, a former Dewey associate who attended one of Dewey's employee termination meetings (ECF Doc. # 44-2).

The parties agree that Dewey provided written WARN notices less than sixty days before terminating the Plaintiff and other class members. But Dewey seeks to avail itself of the Exceptions to WARN Act liability that permit shortened notice. First, Dewey relies on the "faltering company" exception. This exception permits shortened notice by a company that was actively seeking capital or business that would have allowed the company to continue operating, and the company had a good faith basis for believing that issuing a WARN Act notice earlier would have doomed its attempt to obtain the necessary capital or business. 29 U.S.C. § 2102(b)(1); 12 N.Y.C.R.R. § 921-6.2

8

Second, Dewey relies on the "unforeseeable business circumstances" exception, which permits shortened notice when a company's shutdown was caused by business circumstances that were not reasonably foreseeable when notice would have been required. 29 U.S.C. § 2102(b)(2)(A); 12 N.Y.C.R.R. § 921-6.3.

Both of these affirmative defenses are ordinarily very "fact intensive and are thus not conducive to the motion to dismiss stage." *Dewey*, 487 B.R. at 175 (quoting *Thielmann v. MF Global Holdings Ltd.*, 481 B.R. 268, 278 (Bankr. S.D.N.Y. 2012)). But the necessary predicate for a defendant to be able to assert these affirmative defenses allowing for shortened notice is a showing that the shortened notice included a brief statement of the basis for the reduced notice period—the employer must "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3); *see also* 12 N.Y.C.R.R. § 921-6.6 (requiring shortened notice to be "accompanied by a statement of the basis for reducing the notice period").[7]

As already noted, Dewey's counsel concedes that the letters Dewey sent on May 10 and May 14 lacked a brief statement describing the reasons for the shortened notice that would support application of either of the two affirmative defenses. Dewey argues that it satisfied the brief statement requirement *not by* including the brief statement in the written WARN notices, *but rather* by supplementing those notices by inviting every employee to attend meetings where they would be told the reasons for their imminent termination. In his declaration, Stephen Horvath states that he personally attended most of those meetings, where he informed employees

---

[7] In light of the indictments and guilty pleas of Dewey employees it may stretch credulity to argue that Dewey could satisfy the "good faith" requirement for the faltering company defense, or that Dewey's collapse was the result of unforeseeable business circumstances. Those questions need not be reached because the Court concludes that Dewey did not satisfy the notice requirements to trigger possible application of either affirmative defense.

that the layoffs were necessary "because the Firm had been unsuccessful in the measures that had been attempted to continue its operations, either as it was or through a restructuring or merger, and [] Dewey had been unable to extend its credit facility and was overwhelmed in recent days by partner departures."  (Horvath Decl. ¶ 9.)  As for the meetings he did not attend, Horvath states that to his knowledge, the firm's director of finance communicated the same points to attendees.[8]  (*Id.*)

The Plaintiff responds that these in-person meetings were inadequate because the brief statement must be contained in the written WARN notice, not issued separately.  Only 296 of the 429 class members attended these meetings (*see* Opp. at 4), and for that reason alone, the meetings failed as substitutes for actual written statements.  Although Dewey sent supplemental e-mails to the employees who did not attend the meetings, those e-mails either did not mention the reasons for shortened notice (*see* Opp. Ex. G), or only stated that employees were being terminated because of the "firm's financial situation and the recent loss of partners" (*see id*. Ex. H).

At the March 20, 2014 hearing on the Motion, Dewey's counsel emphasized the practicality of its approach.  (*See* Mar. 20, 2014 Tr. at 96:18–25.)  As a large employer in the modern technology age, Dewey asserts that it used a method for communicating (electronic calendar invitations followed by meetings followed by e-mails) with its employees that was reasonably calculated to ensure delivery under the circumstances.  Dewey argues that this method was preferable to inserting the brief statement in the written WARN notices because at the meetings, employees could ask questions about the reasons for shortened notice.  (*Id.* at

---

[8]  Because the Court concludes that the written notices must contain the required brief statement, which they did not, it is unnecessary to decide whether Horvath's alleged oral statements would have constituted a brief statement sufficient to withstand the present Motion if they had been included in the written notices.

23:24.) Thus, Dewey frames the central question on this Motion as: Does the Court "read this brief statement requirement as being something that, in a circumstance where there is an effort to deliver, where everyone is given the chance to sit in a room and hear and ask-follow up questions,"[9] precludes Dewey from availing itself of the WARN Acts' Exceptions?

On the other hand, the Plaintiff's counsel argues that that the WARN Acts are bright-line statutes. Since the statutes require a brief statement to be contained in the WARN notice itself, there is no room for an employer to improvise an alternative method for delivering the statement.

The Court concludes that Dewey's "practicality" approach simply cannot trump the language of the statutes and the implementing regulations adopted by the Department of Labor. Requiring written notice that includes the brief statement does not preclude meetings with employees to further explain the circumstances and allow for employees to ask questions. The written notice may help to better frame the discussion.

## II.   DISCUSSION

### A.   Motion to Strike

Federal Rule of Civil Procedure 12(f), made applicable to this proceeding by Bankruptcy Rule 7012(b), allows the Court to strike an insufficient defense from a pleading. To prevail, the movant must meet the "standard on a 12(b)(6) motion to dismiss for failure to state a claim." *Cohen v. Elephant Wireless, Inc.*, No. 03 Civ. 4058 (CBM), 2004 U.S. Dist. LEXIS 16583, at *7 (S.D.N.Y. Aug. 19, 2004). The movant "must also show that it would be prejudiced if the defense were to remain in the pleading." *Id.* at *7–8. "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *In re Tronox, Inc.*, No. 09 Civ. 6220 (SAS), 2010 U.S. Dist. LEXIS 67664, at *13 (S.D.N.Y. June 28, 2010) (internal quotation marks omitted). And "courts are even more reluctant to grant a motion

---

[9] *See* Mar. 20, 2014 Tr. at 98:18–99:2.

to strike an affirmative defense" before discovery has commenced. *Cohen*, 2004 U.S. Dist. LEXIS 16583 at *8.

    **B.**    **Summary Judgment**

Federal Rule of Civil Procedure 56(a), made applicable by Bankruptcy Rule 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To successfully assert that a fact is not in dispute or cannot be disputed, a movant must

> cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. § 56(c)(1). Moreover, "[t]he party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); s*ee also McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R. 47, 58 (Bankr. S.D.N.Y. 2010).

    **C.**    **WARN Exceptions**

        *1.*    *Statutory, Regulatory, and Interpretive Language*

This Motion raises questions of statutory and regulatory interpretation. Specifically, the Court must decide whether Dewey, as a matter of law, is precluded from asserting that it qualifies for the Exceptions to WARN Act liability, discussed further below. When interpreting these Exceptions, the Court must construe the Exceptions narrowly because the Acts are remedial. *See Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997)

(explaining that exceptions to remedial legislation such as the WARN Act are construed narrowly).

As a starting point, though, the Court must examine what the WARN Acts normally require of employers. Section 2102 of the Federal WARN Act is titled "Notice required before plant closings and mass layoffs." 29 U.S.C. § 2102. The very first provision requires an employer to provide 60-days' *written notice* of a plant closing or mass layoff. *Id.* § 2102(a) (emphasis added). The next subsection—which governs the Exceptions in dispute—does not alter the form or type of notice that must be given.[10] That subsection explains when a shortened notice period is acceptable and provides that when giving shortened notice, an employer must still give "as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." *Id.* § 2102(b)(3). Nothing in subsection (b) indicates that shortened notice with the brief statement may be delivered in a means other than writing. The NY WARN Act contains similar provisions, but requires 90-days' notice. N.Y. Lab. L. § 860, *et seq*. Thus, the statutory language indicates that to qualify for the Exceptions, the employer must deliver written WARN notice.

In addition to the statutory language, the federal WARN regulations (the "Regulations")—which implement the Federal WARN Act—further describe WARN notices. *See* 20 C.F.R. § 639.1(b) ("These regulations establish basic definitions and rules for giving notice, implementing the provisions of WARN."). Regulation 639.7 establishes the required contents of WARN notices and provides that the notice must be "*written* in language understandable to the employees . . . ." 20 C.F.R. § 639.7 (emphasis added). Regulation 639.7

---

[10] Section 2102(b)(2)(B) dispenses with the notice requirement altogether in the event of a natural disaster, but that subsection is not at issue here.

13

does not differentiate between the 60-day notice or shortened notice, so the natural conclusion is that even shortened notice must be written in language understandable to employees.

Dewey concedes that even shortened WARN notices must be written; Dewey only contends that the requisite brief statement may be delivered separately from the shortened notice, by means other than writing. Dewey seizes on the fact that 29 U.S.C. § 2012(b), which governs the WARN Exceptions, does not explicitly require the brief statement to be in writing[11] and does not explicitly require the brief statement to appear in the WARN notice itself.[12] The Plaintiff takes the opposite position, arguing that the brief statement must be written and must be included with the written WARN notice.

To determine whether the brief statement must be contained in the written WARN notice, the Court again turns to the language of the statutes and regulations. First, both WARN Acts establish that employers giving shortened notice must give "as much notice as is practicable *and at that time* shall" give "a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3); N.Y. Lab. L. § 860-c(2). The statutes do not say that the brief statement may be given *around the time* of the shortened notice, or that the statement may be delivered separately from the shortened notice. *See Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276 (11th Cir. 2013) ("'At that time' implies a concrete point at which the employer actually *gives* 'notice.'") (emphasis in original). The Court must afford the term "at that time" its plain meaning. *See In re D.F.*, 70 A.3d 240, 243 (D.C. 2013) ("The primary and general rule of statutory [or regulatory] construction is that the intent of the lawmaker is to be found in the plain language . . . .") (internal quotation marks omitted).

---

[11]   *See* Opp. at 9 ("[T]he statute unequivocally requires the WARN Act notice (but not the "brief statement") be written. If Congress intended that the statement be in writing . . . it would have said so.").

[12]   *See id.* ("Neither the statute nor the regulations say that the "brief statement" must be included in the WARN Act notice if an entity relies on one of the exemptions set forth in 29 U.S.C. § 2102(b).").

Moreover, Regulation 639.9, which governs shortened notice, provides that an "employer must, *at the time [shortened] notice is actually given*, provide a brief statement of the reason for reducing the notification period, *in addition to* the other elements set out in § 639.7." 20 C.F.R. § 639.9 (emphasis added). The only sensible reading of Regulation 639.9 is that a WARN notice delivered on shortened time must contain (1) the brief statement, and (2) all of the other elements required by regulation 639.7. This comports with the plain meaning of the regulatory language. *See In re D.F.*, 70 A.3d at 243 ("Statutory or regulatory construction begins with the plain language of the statute or regulation.") (internal quotation marks omitted).

Still other sources indicate that WARN notices delivered on shortened time must be written and must contain the brief statement. In the Federal Register, the Department of Labor (the "DOL") gave a "section-by-section analysis of the regulations and [public] comments." *See* 53 Fed. Reg. 48884-01 (Dec. 2, 1988). When describing shortened notice, the DOL explained that "a brief statement of the basis for reducing the notification period *should accompany the other elements required in the notice* under the regulations." *Id.* (emphasis added). In a later entry, the DOL explained that the WARN Exceptions should be construed narrowly, and when invoking an exception, an employer must "give notice *containing a brief statement* of the reason" for shortened notice. 54 Fed. Reg. 16042-01 (Apr. 20, 1989) (emphasis added). The DOL's interpretation of the WARN Regulations as requiring the WARN notice to contain the brief statement is entitled to a high degree of deference. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own regulation is "controlling" unless "plainly erroneous or inconsistent with the regulation").

Taken together, the statutory, regulatory, and interpretive content all direct an employer delivering shortened WARN notice to provide the brief statement in that notice itself. Dewey

15

opted not to insert the brief statement in the written WARN notices, so summary judgment in favor of the Plaintiff is proper. *See Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 256 (S.D.N.Y. 1996) (granting plaintiff summary judgment on affirmative defenses due to inadequate brief statement); *see also In re Tweeter Opco, Inc.*, 453 B.R. 534, 546–47 (Bankr. D. Del. 2011) (granting plaintiff summary judgment where defendant did not provide adequate brief statements in shortened WARN notices).

### 2. Policy Considerations

Requiring shortened WARN notice to be written and to contain the brief statement adheres to the WARN Acts' legislative scheme. The Federal WARN Act "draws a lot of bright lines; it is really nothing *but* lines." *Phason v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007) (emphasis in original). Those bright lines protect workers and their families by ensuring that they can properly prepare for the loss of employment and need to find new work. *See* 20 C.F.R. 639.1 (explaining the purposes and benefits of the Federal WARN Act). Here, the bright lines ensure that an employer cannot qualify for one of the WARN Exceptions without first giving employees a written WARN notice that contains all of the necessary information required by the statute, including the brief statement. This prevents information from trickling out in piecemeal fashion or in a manner that may not reach all employees.

Dewey argues that because the WARN Exceptions deal with extenuating circumstances, the Court may condone delivery of WARN notices and brief statements by means other than writing so long as those means were practicable under the circumstances. In support, Dewey cites *Richards v. Advanced Accessory Systems, LLC (In re Advanced Accessory Systems, LLC)*, 443 B.R. 756, 767–68 (Bankr. E.D. Mich. 2011), where a bankruptcy court found that a company qualified for the "unforeseeable business circumstances" exception even though it did

16

not provide any written notice at all, let alone a written brief statement. The company relied on employee meetings instead. *Id.* In that case, the court found that the employer was only required to give notice that was "practicable under the circumstances," and given the company's swift demise, meetings in lieu of written notice were practicable. *Id.* at 767. Requiring written notice in extreme and dire circumstances would be "nonsensical" according to the *Advanced Accessory* court. *Id.*

But the *Advanced Accessory* court was not confronted with a case where a significant number of employees did not attend the meetings where the brief statements were purportedly delivered. *See id.* at 761. The *Advanced Accessory* court explained that, upon learning of the business's inability to continue operating, the employer "held meetings at each of [its] facilities" to notify employees of the imminent layoffs, and "[a]t the meetings, [the employer] explained the reasons for shortened notice." *Id.* The *Advanced Accessory* court did not address any allegations that a substantial group of the affected employees never received the required brief statements. The facts in *Advanced Accessory* differ significantly from those here.

Beyond this distinction, the Court respectfully disagrees with *Advanced Accessory*. That court addressed the plaintiffs' curious argument that because the defendant did not provide 60-days' written notice, it could not avail itself of one of the WARN Exceptions. *Id.* at 767. The court properly rejected that argument because imposing the 60-days' notice requirement for shortened notice is nonsensical. Still, though, the *Advanced Accessory* court never addressed why shortened notice did not also fall under the written notice requirement, and instead declared that an employer must only do "whatever is practicable under the circumstances." *Id*. But eliminating the written notice requirement altogether contradicts the WARN Regulations and existing caselaw in this district. Regulation 639.7 requires WARN notices to be "*written* in

17

language understandable to the employees . . . ." 20 C.F.R. § 639.7 (emphasis added). Moreover, Regulation 639.9 provides that shortened notice may even be given "after the fact," so the Court finds no basis to conclude that an employer can disregard the written notice requirement altogether. 20 C.F.R. § 639.9. Even under the most extenuating circumstances, an employer can still deliver written notice considering that it may do so after the fact. Moreover, one court in this district explicitly found that "the statute and regulations clearly provide that an employer cannot invoke either [E]xception without giving some *written* WARN notice." *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) (emphasis added). The Court concludes that even under dire circumstances, employers must deliver written WARN notices containing the necessary brief statements to qualify for the WARN Exceptions.

### III.    CONCLUSION

Dewey provided written WARN notices on shortened time. Those notices did not contain the necessary brief statements for Dewey to satisfy the WARN Exceptions. Although Dewey attempted to supplement the WARN notices with firmwide meetings delivering the brief statements, the Court rejects the argument that those meetings complied with the WARN Acts' provisions. The facts here demonstrate why an employer should not be permitted to deliver the brief statements separately: not all class members attended the meetings, and what was said is subject to dispute. Dewey's position raises the type of post-hoc, litigation-oriented argument that the WARN Acts' bright lines are intended to avoid.

The WARN Exceptions are to be construed narrowly, and when giving shortened WARN notice, an employer must deliver the required brief statement in the written WARN notice itself.

The Court concludes that Dewey does not qualify for the WARN Exceptions. The Plaintiff's Motion is therefore **GRANTED**, and Dewey's first and second affirmative defenses are **STRICKEN**.

    **IT IS SO ORDERED**.

Dated:  April 10, 2014
       New York, New York

                                          ___*Martin Glenn*___
                                              MARTIN GLENN
                                       United States Bankruptcy Judge